FRANK VILARIÑO MARTÍNEZ, Appellant, v. THE REGISTRAR OF PROPERTY OF PONCE, Respondent.

No. G-62-2. Decided May 6, 1963.

*P. Álvarez Leandri* for appellant. The respondent Registrar appeared by brief.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Ramírez Bages.

MR. JUSTICE RAMÍREZ BAGES delivered the opinion of the Court.

Frank Vilariño Martínez, married to Adela Rull Moratalla, presented in the Registry of Property of Ponce a deed of purchase of certain urban property, and "to enable said vendee to possess, have, use and enjoy the same . . . as its sole and legitimate owner, without any limitation whatsoever." Enclosed as complementary was a certified copy of deed No. 46 of April 26, 1960, executed before Notary Práxedes Álvarez Leandri, by virtue of which deed No. 1030 on marriage articles, executed by the said spouses in Madrid, Spain, before Notary Manuel Amorós Gozálbez, was protocolized. The third and fourth clauses of this deed provide that:

"Third: The appearing parties have agreed that the capital contributed by Frank Vilariño will be considered as his separate property during his marriage to Adela Rull and subject to his exclusive administration, as well as the personal and real property and real and personal rights, and which he may transmit, alienate, sell, transfer, exchange or encumber them without any limitation whatsoever and without the consent of his wife Adela Rull.

"Fourth: They have further agreed that Adela Rull shall have the free administration of her separate property and may dispose of it without the intervention of her husband Frank Vilariño, and that she may transact all kinds of operations without her husband's consent and as of this time. It is further agreed that Adela Rull may acquire all kinds of personal and real property, real and personal rights, and also transmit, alienate, sell, transfer, exchange or encumber them under such covenants and conditions and for the ends and purposes and for the consideration and accounts which she may determine, and to dispose of them, without any limitation whatsoever, without the consent of her husband Frank Vilariño."

The Registrar recorded that transaction "with the curable defect that the separate character of the property acquired has not been established, since the deed on marriage articles does not reveal the system by which the property acquired during the marriage shall be governed, nor is the separate character of the money object of the purchase established."

On April 13, 1961 the said spouses executed deed No. 29 before Notary Álvarez Leandri for the purpose of clarifying the marriage articles already referred to, and to that end in the fourth paragraph of deed No. 29 they set forth the following:

"FOURTH: That the appearing parties expressly wish to clarify, since that was their intention and purpose in executing the marriage articles, that Frank Vilariño Martínez could acquire and also transmit, alienate, sell, transfer, exchange or encumber, after their marriage, any kind of personal and real property, real and personal rights, without any limitation whatsoever and without the consent of his wife, in the same manner as the other appearing party, Adela Rull Moratalla, does and has done."

A certified copy of the latter deed, accompanied by the corresponding petition, was presented in the Registry for the purpose of curing the defect pointed out by the Registrar, but the latter refused to cure the defect sought "on the ground that this deed does not cure by itself the defect pointed out and that it is contrary to the provisions of Tit. III, Ch. 1, of our Civil Code, specifically §§ 1267, 1271, 1272, 1273 and 1274 thereof."

Petitioner charges the Registrar with the commission of two errors which, briefly, consist in having set forth (1) that the separate character of the property acquired was not established by the deed on marriage articles, and (2) that the explanatory deed is contrary to the aforesaid provisions of the Civil Code.

■ We agree with the Registrar that petitioner having actually consented to what was set forth by the Registrar

in his first note of refusal pointing out the curable defect in question, we must confine ourselves to examining and deciding whether or not the defect could be cured by the said deed whereby the spouses sought to clarify their former marriage articles. *Echavarría et al.* v. *Registrar*, 24 P.R.R. 80 (1916) ; *Brac* v. *Registrar*, 23 P.R.R. 696 (1916).

Petitioner contends that the failure to make provision in the third clause of the deed on marriage articles with respect to the property acquired by petitioner during the marriage was cured in the fourth clause respecting the property which the wife would acquire during such state; that the intention and purpose of said deed was to provide for the separation of property contributed to the marriage as well as for that acquired by him or by her during such marriage; wherefore this situation should be clarified, as was actually done, by means of deed No. 29. Appellant is not right.

■ The existing Civil Code provides that persons who may be joined in matrimony may, before celebrating it, execute contracts, stipulating the conditions for the conjugal partnership with regard to present and future property, without any other limitations than those mentioned in this title (Civil Code, § 1267—31 L.P.R.A. § 3551). *"In order that any change in the marriage contract be valid it must be made before the celebration of the marriage . . ."* (Civil Code, § 1271—31 L.P.R.A. § 3555). *"After the marriage has been celebrated, the marriage contract executed prior thereto cannot be changed,* whether present or future property is involved" (Civil Code, § 1272—31 L.P.R.A. § 3556). (Italics ours.)

■■ Let us consider first the scope of these statutory provisions. The reason for requiring, as an essential requisite, that the property contract be executed before the celebration of the marriage, is based on the need, first, that the interested parties be in a position to give freely their consent

for such execution; and, second, to enable third parties to acquaint themselves with the system adopted and the stipulations agreed upon as of a certain time, after which no change may be made. The provision of § 1267 of the Civil Code would be futile if the spouses, even if they could not execute their marriage articles after contracting marriage, could change, alter or modify them in any sense. *Cf.* IX Manresa, *Comentarios al Código Civil Español* 144–45 (5th ed.) ; V-1 Castán, *Derecho Civil Español, Común y Foral* 189–90 (7th ed.). Inasmuch as in the absence of marriage articles the marriage is deemed to be contracted under the community property system, it is obvious that the provisions of the former should be clear and definite, and to that effect they must be strictly construed in everything respecting the system of said partnership. *García* v. *Font et al.*, 6 P.R.R. 120 (1904) ; *cf.* Manresa, *op. cit. supra* at 101. "If there is a contract, the spouses and third parties must abide by it; no change or modification may be made after the marriage; in other words, such changes can have no effect since the contracts shall subsist as they were executed before the marriage." Manresa, *op. cit. supra* at 148–49.

■■ As to the meaning of the term *change* referred to in §§ 1271 and 1272 of the Civil Code, Manresa maintains, *op. cit. supra* at 147 and 153, that "To change means to alter, modify some thing or act in its essence or in its details or circumstances." However, the spouses may make a concession during the marriage, consistent with the marriage articles, provided no change is involved. For example, "those agreements which, without producing novation in the existing relations, tend to guarantee better or assure the observance of the obligations contracted." There is no change "in the fact of setting forth the delivery of property promised or of assuring such delivery by means of pledge or mortgage; in accepting inheritances, legacies or gifts . . . ; *in the mere rational interpretation of legally stipulated clauses;* and in

the acts or disposition or exercise by the spouses of the rights conferred to them." Manresa, *op. cit. supra* at 153–54 and 148. (Italics ours.)

■ Scaevola assumes an even more restrictive attitude than Manresa as to the scope of the term *change*. He points out that text writers distinguish, to that effect, between additional *explanatory and interpretative clauses*. In his opinion, all of them come within the general sphere of prohibition couched in the phrase *any change*. As to the latter two, the executing parties are not the ones called upon to interpret the contracts in case of conflict, since that power is reserved to the judicial discretion whenever it is necessary to settle interests and conflicting rights. Hence, not even the fact that there be harmony and conformity between the executing parties of the marriage articles authorizes them to change or modify them after the marriage is celebrated. XXI Scaevola, *Código Civil* 235.

■ From an examination of the third and fourth clauses of the marriage articles in the light of the doctrine announced, we conclude that those clauses are not susceptible of such "clarification." In other words, we hold that the Fourth paragraph of deed No. 29, copied above, constitutes a *change* of the third clause of the contracts and it is therefore improper, as contended by the Registrar. Since this is so, we need not decide, for the purpose of disposing of this appeal, whether certain marriage articles are susceptible of clarification or interpretation after the marriage of the executing parties.

The third clause above mentioned is in fact a mere repetition of the juridical situation prevailing in the absence of a covenant to the contrary, effective and valid in law. It is therefore unnecessary and useless in certain marriage articles. In contrast, the fourth clause contains a stipulation in connection with the wife which is not included in the third clause in respect to the husband, whereby the wife may ac-

quire all kinds of personal and real property, real and personal rights, and also dispose of them by sale, alienation, transfer, exchange or encumbrance, under the covenants and conditions, for the ends and purposes, and for the consideration and accounts which she may determine, without limitation and without her husband's consent.

This absence of authority as to the husband who is subjected to the full strictness of the community partnership, the latter being modified as respects the wife, may seem somewhat unusual and constitute an anomalous situation for petitioner. Perhaps it was the intention of the parties, as alleged by petitioner, that the spouses should have equal authority with respect to the property acquired by each of them during the marriage. However, such intention did not take shape in the marriage articles. Truly, such intention cannot be rendered effective by the exclusive will of the spouses during the marriage by pretending to carry out, in order to achieve such purpose, what appears in law to be a substantial "change" of the contract respecting property during the marriage. Therefore, the Registrar could not record the same in the absence of an express judicial determination to that effect. In view of the broad freedom to contract provided by the Civil Code in the matter of marriage articles to the point of being able to modify and even dispense by such means with the legal community property system, Castán, *op. cit. supra* at 186–87; II-1 Puig Peña, *Tratado de Derecho Civil Español* 244 (1953), it is difficult to understand that the failure to grant powers to the husband by the third clause on an equal footing with those granted to the wife by the fourth clause of such contracts, was due to an involuntary omission or to the fact that the real intention of the parties was not carried out. At any rate, as stated above, this situation is not susceptible of correction in the manner sought by petitioner.

The decision appealed from will be affirmed.